NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAYS INNS WORLDWIDE, INC., | Civil Action No. 09-2275 (SDW) |
| Plaintiff, | |
| v. | **OPINION** |
| RAM LODGING, LLC, ET AL., | April 14, 2010 |
| Defendants. | |

**WIGENTON,** District Judge.

Before the Court is the motion of defendants RAM Lodging, Inc. ("RAM Lodging"), Yagnesh Patel, Balvent Patel, and Ichchhu Patel (sometimes collectively "Defendants"), to transfer the pending action to the United States District Court for the Southern District of Indiana pursuant to 28 U.S.C. § 1404(a). (Dkt. Entry No. 14). Plaintiff, Days Inns Worldwide, Inc. ("Plaintiff") opposes this motion. No oral argument was heard pursuant to Fed. R. Civ. P. 78.

After considering the arguments in support of and in opposition to the motion, and for good cause shown, and for the reasons expressed below, Defendants' motion to transfer to the Southern District of Indiana is **GRANTED**.

**I.    BACKGROUND**

On April 29, 2004, the parties entered into a License Agreement for the operation of a 100-room hotel located in Indianapolis, Indiana (the "Facility"). (Compl., ¶ 11 and Exh. A). Among its obligations under the License Agreement, RAM Lodging was required to make certain periodic

payments to Plaintiff collectively referred to as Recurring Fees as defined in the License Agreement. (Compl., ¶ 13 and Exh. A, §§ 7, 18 & Schedule C). Pursuant to Section 11.4 of the License Agreement, Plaintiff was permitted to suspend RAM Lodging from the Central Reservation System ("CSR") for any default or failure to pay or perform under the Agreement. (Id. at Exh. A, § 11.4).

The License Agreement contains a choice-of-law provision and a forum selection clause, which govern disputes arising therefrom. The relevant provisions reveal that the License Agreement would be governed and construed under New Jersey law and that RAM Lodging agreed to waive its objections to personal jurisdiction in New Jersey and to New Jersey courts as a proper venue. (Id. at Exh. A, § 17.6). Specifically, Section 17.6.3 states that RAM Lodging "consent[s] and waive[s] [its] [] objection to the non-exclusive personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey for all cases and controversies under this Agreement between [Plaintiff] [] and [RAM Lodging] []." (Id. at Exh. A, § 17.6.3).

Effective as of the execution date of the License Agreement, defendants Yagnesh Patel, Balvent Patel, and Ichchhu Patel (the "Guarantors") provided Plaintiff with a guaranty of RAM Lodging's obligations under the License Agreement (the "Guaranty"). (Compl., ¶ 18 and Exh. B). The Guarantors agreed, inter alia, that, upon default by RAM Lodging and notice from Plaintiff, they would "immediately make each payment and perform or cause [RAM Lodging] [] to perform each unpaid or unperformed obligation of [RAM Lodging] [] under the Agreement." (Id.) The Guaranty adopts by reference Section 17 of the License Agreement governing choice-of-law, personal jurisdiction, and venue. (Id. at Exh. B).

According to Plaintiff, Defendants failed to timely pay Recurring Fees due under the License

Agreement and the Guaranty. (Id. at ¶¶ 21-23 & Exhs. A & B). Plaintiff filed the instant breach of contract action to recover the allegedly outstanding Recurring Fees. (Id. at Counts 1-6).

Defendants filed an Answer and asserted Counterclaims for: (1) breach of the implied covenant of good faith and fair dealing; and (2) tortuous interference with business and prospective economic advantage.[1] (Counterclaim at Counts 1-2). Defendants' Counterclaim stems from Plaintiff's alleged misconduct following the parties' failed negotiations concerning an early termination of the License Agreement. (Id. at ¶¶ 12-14). Defendants argue that Plaintiff maliciously intended to frustrate Defendants' ability to benefit from their financial investment in the operation and renovation of the Indianapolis hotel. (Id. at ¶¶ 14-16, 20, 21, 43-44). As a result, Defendants were unable to generate sufficient revenue to satisfy their financial and other obligations under the License Agreement. (Id. at ¶ 44).

## II. ANALYSIS

Section 1404(a) permits a district court to transfer a case to any other district where venue is proper, such as here, "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. §1404(a). A decision to transfer venue is based on "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." Jumara v. State Farm Ins., 55 F.3d 873, 879 (3d Cir. 1995). The party seeking transfer bears the burden of establishing that transfer is necessary. Id. The moving party must "show the proposed alternative forum is not only adequate, but also more appropriate than the present forum." Hoffer v. InfoSpace.com, Inc., 102 F. Supp.2d 556, 572 (D.N.J.

---

[1] Plaintiff's motion to dismiss Defendants' two count Counterclaim is pending before the Court. (Dkt. Entry No. 22).

3

2000). The parties' execution of a contract containing a forum selection clause is a "significant factor that figures centrally into the district court's calculus." Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).

The decision of whether to transfer a case is committed to the trial court's sound discretion. Cadapult Graphic Sys. v. Tektronix, Inc., 98 F. Supp.2d 560, 564 (D.N.J. 2000). A reviewing court must first ascertain whether the action could have been properly brought in the transferee district. Id. at 570. See Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970). The movant must demonstrate "the proprietary of venue in the transferee district and jurisdiction over all of the defendants." LG Electronics, Inc. v. First Int'l Computer, Inc., 102 F. Supp.2d 574, 586 (D.N.J. 2001).

After the court determines that the jurisdiction and venue would be proper in the transferee district, the court, then, must consider the validity of any disputed forum selection clause. Jumara, 55 F.3d at 879. When a plaintiff freely enters into a contract for a specific venue, deference then should not be given to a subsequent choice of a different forum. Id. at 880. Additionally, when the forum selection clause is valid, the party resisting its enforcement has the burden of showing that the choice of forum should not be enforced. See id.

Even though the forum selection clause is presumptively valid, the Court still must consider two categories of factors. See Jumara, 55 F.3d at 879-80. The first category includes considerations relevant to the private interests of the litigants. Id. at 879. Important private interests are: (1) "plaintiff's forum preference;" (2) "defendant's preference;" (3) "whether the claim arose elsewhere;" (4) "the convenience of the parties as indicated by their relative physical and financial condition;" (5) "the convenience of the witnesses – but only to the extent that the witnesses may

4

actually be unavailable for trial in one of the fora," and (6) "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum." Id. (internal citations omitted).

The second category includes the public's interests in a fair and efficient administration of justice. Jumara, 55 F.3d at 879-80. Considerations here include: (1) "the enforceability of the judgment;" (2) "practical considerations that could make the trial easy, expeditious, or inexpensive;" (3) "the relative administrative difficulty in the two fora resulting from court congestion;" (4) "the local interest in deciding local controversies at home;" (5) "the public policies of the fora;" and (6) "the familiarity of the trial judge with the applicable state law in diversity cases." Id. (internal citations omitted).

Neither list of factors is exhaustive. Rather, the analysis under Section 1404(a) is flexible and individualized, based on the unique facts of each case. Lawrence v. Xerox Corp., 56 F. Supp.2d 442, 449 (D.N.J. 1999).

### A. Jurisdiction and Venue of the Transferee District

As a threshold matter, this Court must first decide whether the transferee district would have proper jurisdiction and venue. These factors are satisfied if, at the time the action was originally commenced: (i) venue was proper in the transferee district under 28 U.S.C. § 1391 and (ii) the transferee district could have exercised personal jurisdiction over the defendants. See Shutte, 431 F.2d at 24. The proper venue for this case is defined by 28 U.S.C. § 1391(a), which states that in a civil action wherein jurisdiction is based solely on diversity of citizenship, venue is proper, except as otherwise provided by law, only in:

(1) a judicial district where any defendant resides, if all defendants reside in the same State,

5

 (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or

 (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).

"For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). See Jumara, 55 F.3d at 879. Thus, the threshold question is whether venue would be proper in Indiana. This Court concludes that venue would be.

As to subsection (1), all Defendants, except Balvant Patel, are Indiana residents. (Ans., ¶¶ 2-5). Since all Defendants do not reside in Indiana, venue, therefore, would not be proper in the transferee district under subsection (1).

With respect to venue under subsection (2), the inquiry turns on whether a "substantial part of the events or omissions giving rise to the claim occurred" in Indiana. "In assessing whether events or omissions giving rise to the claims are substantial, it is necessary to look at the nature of the dispute." Cottman Transmission Systems, Inc. v. Martino, 36 F.3d 291, 295 (3d Cir. 1994). Here, the Court finds that a substantial part of the events giving rise to Plaintiff's claims occurred in Indiana, where the hotel is located. Specifically, Defendants' alleged failure to remit payment for Recurring Fees and breach of RAM Lodging's obligation to operate the hotel occurred in Indiana, not New Jersey. See, e.g., Cottman, 36 F.3d at 295 (holding that venue was improper in Pennsylvania because "[t]he only events sufficiently substantial to give rise to [plaintiff's] present causes of action occurred in" Michigan, where the franchise was located); Ramada Worldwide Inc.

v. Brooklyn Park Hotel Properties, LLC, civ. no. 05-3842, * 4 (D.N.J. Dec. 15, 2005) (JAG) (concluding that venue in franchise breach of contract action was not properly laid in New Jersey because "the only events sufficiently substantial to give rise to Plaintiff's causes of action occurred in Minnesota.").

Finally, this Court is satisfied that venue would be established in Indiana under subsection (3) of § 1391(a). All Defendants consent to personal jurisdiction in Indiana. Therefore, this action may have been properly brought in Indiana. In short, this Court finds that the District Court for the Southern District of Indiana would have proper jurisdiction and venue, and thus Indiana is a proper alternative forum.

### B. Validity of the Forum Selection Clause

On their motion to transfer, Defendants resist enforcement of the forum selection clause on four grounds: (1) the clause is non-exclusive; (2) the clause demonstrates unequal bargaining power between the parties; (3) it is not applicable to Defendants' counterclaim for tortious interference; and (4) New Jersey has no real connection to the parties' dispute, and thus is an improper forum.

The Court rejects each of Defendants' contentions as appropriate grounds to invalidate the clause. "In federal court, the effect to be given a contractual forum selection clause in diversity cases is determined by federal not state law." Jumara, 55 F.3d at 877. In the Third Circuit, a forum selection clause is presumptively valid and will be enforced:

> unless the party objecting to its enforcement establishes (1) that it is the result of fraud or overreaching; (2) that enforcement would violate strong public policy of the forum; or (3) that enforcement would in the particular circumstances of the case result in a jurisdiction so seriously inconvenient as to be unreasonable.

Coastal Steel Corp. V. Tilghman Wheelabrator, Ltd., 709 F.2d 190, 202 (3d Cir. 1983) (quoting M/S

Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12-13 (1972)).

As an initial matter, none of defendants' proffered reasons are defined in Coastal Steel as grounds on which to find a forum selection clause unenforceable. Yet, to the extent Defendants argue that any unequal bargaining power between the parties amounts to the clause being the product of fraud or overreaching, this Court rejects Defendants' contention.

In arguing that the clause is unenforceable, Defendants rely on Judge Ackerman's finding of unequal bargaining power in Ramada Worldwide, Inc. v. Bellmark Sarasota Airport, LLC., 2006 WL 1675067 (D.N.J. Jun. 15, 2006). Judge Ackerman noted that the clause was "part of a boilerplate provision and was in no way emphasized within the text of the contract." Id. at 3.

Judge Ackerman's conclusions do not support a finding of unenforceability of the forum selection clause here. Whether the clause was part of a boilerplate provision within the License Agreement does not evidence that it was the product of fraud or overreaching. The content and placement of the clause within the License Agreement has no bearing on its enforceability.

Additionally, the lack of negotiations over the forum selection clause does not render it unenforceable. Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585 (1991); Foster v. Chesapeake Ins. Co., LTD., 933 F.2d 1207, 1219 (3d Cir. 1991) ("That there may not have been actual negotiations over the [forum selection] clause does not affect its validity.") Defendants have presented no evidence that Plaintiff prevented them from taking additional time to review the License Agreement; consult with an attorney; and/or ask questions about the terms of that written contract, including the forum selection clause.

Accordingly, Defendants have not made any compelling showing that the forum selection clause was the product of overreaching. Thus, Defendants have failed to sustain their burden of

demonstrating the unenforceability of the forum selection clause. Yet, the Court must still consider the § 1404(a) competing private and public interests giving the clause due consideration.

C.   Private Interest Factors

As to the first factor, a plaintiff's choice of forum is given great weight in an analysis under Section 1404(a). See Lony v. E.I. DuPont de Nemours & Co., 886 F.2d 628, 633 (3d Cir. 1989). However, "while courts normally defer to a plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue." Jumara, 55 F.3d at 880. Here, Plaintiff chose to litigate in this Court pursuant to the forum selection clause. As such, this Court would ordinarily defer to Plaintiff's choice of forum. However, Plaintiff's choice of forum decreases where, as here, " the central facts of a lawsuit occur outside the chosen forum." In re Consolidated Parlodel Litigation, 22 F. Supp. 2d 320, 323-24 (D.N.J. 1998) (internal quotations and citations omitted). See Ricoh Co., Ltd. v. Honeywell, Inc., 817 F. Supp. 473, 481-82 (D.N.J. 1992. As detailed below, nearly all of Defendants' alleged failure to perform and remit payment under the License Agreement occurred in Indiana. Accordingly, the Court finds that while Plaintiff's choice to litigate this action in New Jersey weighs against transfer, "that weight is slight." Id. at 324.

As to the second factor, Defendants prefer to litigate in the Southern District of Indiana. Additionally, this Court rejects Plaintiff's contention that Defendants have essentially waived their right to assert their own convenience by agreeing to the non-exclusive forum selection clause. In Plum Tree, Inc. v. Stockment, 488 F.2d 754, 758 n.7 (3d Cir. 1973), the Third Circuit noted that whether or not a forum selection clause amounts to a waiver by the moving party of its right to request a transfer based on its own convenience depends on whether the clause is mandatory or

permissive. See Travelodge Hotels, Inc. v. Mangat Houston Race Track, L.L.C., No. 06-3543, 2007 WL 2156367, * 8 (D.N.J. Jul. 25, 2007).

Here, based on the plain language of the forum selection clause, the Court concludes that the clause is permissive. The clause expressly states that New Jersey is a "non-exclusive" forum, which demonstrates that litigation could be commenced in another state, such as Indiana. Given the clause's permissive language, this Court does not consider Defendants' assent to the clause as a waiver of their right to claim Indiana as their preferred forum. Thus, this factor weighs in favor of transfer.

The third private factor, where the claims arose, is the most critical to the Court's analysis. The inquiry turns on which forum contains the center of gravity of the dispute, its events, and transactions. See Park Inn International, L.L.C. v. Mody Enterprises, 105 F. Supp.2d 370, 377-78 (D.N.J. 2000). Here, the parties' dispute centers on whether Defendants failed to perform under the License Agreement, including their failure to remit payments and operate the franchise facility in Indiana. Plaintiff's legal claims arise from the parties' obligations under the License Agreement. Defendants' duties to operate the hotel and remit fees and payments occurred in Indiana. Plaintiff vaguely contends that New Jersey was the situs where: (1) services were provided to Defendants; (2) Plaintiff executed the License Agreement; (3) performance under the Agreement was contemplated and undertaken; (4) the License Agreement was breached; (5) Plaintiff decided to suspend RAM Lodging from use of the CRS; (6) Plaintiff resides; (7) Plaintiff's financial damages were realized; and (8) Plaintiff chose to commence litigation.

Beyond its own unsubstantiated assertions, Plaintiff offers no evidence to demonstrate that New Jersey is the center of gravity of the dispute. Indeed, the Complaint focuses on Defendants'

obligations to operate a hotel in Indiana, including their duty to make certain periodic payments to Plaintiff as governed by the License Agreement. (Compl., ¶¶ 11-14). Each of Plaintiff's causes of action concern: revenue derived from the hotel franchise in Indiana; Defendants' breach of their obligation to operate the hotel in Indiana; Defendants' failure to remit Recurring Fees from Indiana - where all but one defendant are located; and the obligations of the guarantors, who all reside in except for Balvant Patel, to make payment and perform in the event of RAM Lodging's default. (Compl., Counts 1-6). Even though the result of Defendants' alleged failure to perform was Plaintiff's non-receipt of payment in New Jersey, the inactions causing this result occurred in Indiana. See Cottman, 36 F.2d at 295; see also Ramada Worldwide Inc., civ. no. 05-3842 at * 4. Accordingly, the Court finds that the claims arose in and the center of gravity of the parties' dispute is Indiana. Thus, this third factor weighs in favor transfer.

Fourth, Defendants are located in Indiana. Thus, it is more convenient for them to litigate in Indiana. Plaintiff is incorporated in Delaware, and its principal place of business is in New Jersey. Yet, Plaintiff does not allege that it has inadequate resources to litigate this dispute in Indiana. On the other hand, Defendants provide a supporting certification from defendant Yagnesh Patel stating that Defendants are in a financial crisis as a result of Plaintiff's unlawful conduct, giving rise to their counterclaims. (Patel Cert., ¶¶ 47-48 and Exh. N). Accordingly, this factor tips the scale in favor of transfer.

Fifth, neither party offers any evidence suggesting that any witness may be unavailable for trial in either forum. While Plaintiff asserts that all of the relevant witnesses are located in New Jersey, Defendants contend that all but two of the potential witnesses, reside in Indiana, and thus will "likely" be available for trial only in Indiana. The convenience of witnesses should be considered

11

"only to the extent that the witnesses may actually be unavailable for trial in one of the fora." Jumara, 55 F.3d at 879. There is no evidence that any witnesses for either party would be totally unavailable to testify in either New Jersey or Indiana as opposed to merely being inconvenienced by the distance.[2] Accordingly, the convenience of the witnesses is a neutral factor that does not weigh in any party's favor.

Sixth, the private factor regarding the location of the relevant documents is a neutral factor. Plaintiff claims that the documents are located in New Jersey. Defendants proffer that all of their relevant books and records and those of their witnesses are located in Indiana. This case turns on the interpretation of the License Agreement and Guaranty as well as other documents – such as notices of default to Defendant. Significantly, the parties have not submitted that the transportation of documents to either forum would be unduly burdensome or expensive. Thus, this factors does not weigh in any party's favor.

D. Public Interest Factors

As to the relevant public interest factors, Defendants address only the following three factors: (1) court congestion; (2) localized interest of each forum in deciding the case; and (3) the trial judge's familiarity with the applicable state law. Plaintiff does not address of any of the public interest factors.

As to court congestion, Defendants cite to caseloads from 2003-2008 for both this District and the Southern District of Indiana as evidence that there are routinely fewer civil cases pending in the Southern District of Indiana than in this District. Indeed, in 2008, 2,704 civil cases were filed

---

[2] The Court, however, notes that in the event Defendants' Indiana based witnesses refused to testify at trial in New Jersey, this Court would lack the ability to compel their live testimony as beyond the subpoena powers of this Court. See FED. R. CIV. P. 45.

in the Southern District of Indiana while 6,652 civil cases were filed in this District. (David Butler Decl., at Exh. D). As such, Defendants have offered competent evidence establishing that more congestion exists for judges in this District than in the Southern District of Indiana. Accordingly, this factor weighs in favor of transfer.

As to local courts "deciding local controversies at home," Defendants concede, and the Court finds, that both forums have an interest in deciding this case. Indiana has a local interest in regulating the conduct of its corporations and individual citizens. Additionally, nearly all of the operative acts underlying Plaintiff's claims arose in Indiana. On the other hand, "New Jersey has an interest in trying a case involving allegations that one of its citizens was the victim of a breach of contract." Travelodge Hotels, Inc., 2007 WL 2156367, at * 8. As Indiana is the center of the parties' dispute, the Court finds, on balance, that Indiana has a stronger local interest in the outcome of this case. Thus, this factor tips in favor of transfer.

As to the last relevant factor, justice requires that, whenever possible, a diversity case should be decided by the court most familiar with the applicable state law." NCR Credit Corp. v. Ye Seekers Horizon, Inc., 17 F. Supp.2d 317, 323 (D.N.J. 1998); see also Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509 (1947)("There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle the problems in conflicts of laws, and in law foreign to itself."). The License Agreement provides that it is governed by the laws of the state of New Jersey, which Defendants do not dispute. Thus New Jersey law will be applied to decide Plaintiff's claims.

Yet, Defendants contend that New Jersey law and Indiana law apply similar elements for breach of contract claims. Defendants further submit that Indiana law, which differs significantly

from New Jersey law, will be applied to their tortious interference counterclaim because the forum selection clause does not govern this counterclaim. Thus, according to Defendants, an Indiana Court would be better suited to decide this case. Plaintiff does not address any differences between New Jersey law and Indiana law on the issues involved in this action, nor explain why an Indiana Court would have difficulty applying New Jersey law to any of the claims. On balance, this factor does not weigh decidedly in favor of either forum.

### III. <u>CONCLUSION</u>

Having considered the parties' submissions, having good cause, and for the reasons set forth above, the Court concludes that Defendants have proven that they should not be bound by their contractual choice of forum (as dictated by Plaintiff) and that this matter should be litigated in Indiana. This case has such significant ties to Indiana, and thus, on balance, the competing public and private interests weigh in favor of transferring this action to the District Court for the Southern District of Indiana. Accordingly, Defendants' motion to transfer the action to the Southern District of Indiana, (Dkt. Entry No. 14), is **GRANTED**, pursuant to 28 U.S.C. § 1404(a). In light of the Court's rulings herein, Plaintiff's Motion to Dismiss Defendants' two count Counterclaim, (Dkt. Entry No. 22), is **DISMISSED AS MOOT**.

SUSAN D. WIGENTON
United States District Judge

cc: Hon. Madeline Cox Arleo, U.S.M.J.
Clerk of the Court
Parties